NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNIVERSITY SPINE CENTER, on assignment of Fernando F., <br><br> Plaintiff, <br><br> v. <br><br> HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY and PSEG SERVICES CORPORATION, <br><br> Defendants. | Case No. 16-cv-8021(SDW)(LDW) <br><br><br> **OPINION** <br><br><br> March 6, 2018 |

**WIGENTON**, District Judge.

Before this Court is Defendants Horizon Blue Cross Blue Shield of New Jersey ("Horizon") and PSEG Services Corporation's ("PSEG") (collectively, "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Defendants' Motion for Summary Judgment is **GRANTED**.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

On or about November 10, 2015, two surgeons affiliated with Plaintiff University Spine Center ("Plaintiff"), a healthcare provider located in Passaic County, New Jersey, performed in-patient, non-emergency spinal surgery on Fernando F. ("Patient"). (Dkt. Nos. 35-1 ¶¶ 1, 16; 37-1

1

¶¶ 1, 16.)[1] At that time, Patient was insured by a PSEG Direct Access PPO Option health benefit plan (the "Plan"), for which Horizon acted as the claims administrator. (Dkt. Nos. 35-1 ¶¶ 2, 4; Dkt. No. 37-1 ¶¶ 2, 4.)[2] On or about February 3, 2015, Patient executed a valid assignment to Plaintiff. (Am. Compl. ¶ 8 and Ex. B; Dkt. No. 35-2 at 12 (admitting that Plaintiff "stands in" Patient's shoes as his "assignee").) Plaintiff and one of the surgeons who performed Patient's surgery are out-of-network providers under the Plan. (Dkt. Nos. 35-1 ¶¶ 8, 17-19; 37-1 ¶¶ 8, 17-19.)

The terms and conditions of the Plan are set out in a Summary Plan Description ("SPD"). (Dkt. Nos. 35-1 ¶¶ 6-7, 37-1 ¶¶ 6-7.) The SPD provides, in relevant part, that the Plan "need only pay the Allowance for Covered Services and Supplies and has no further liability." (Dkt. No. 35-4 at 234, 236.) The SPD defines Allowance as the least of "the actual charge made by the provider for the service or supply" or "in the case of Out-of-Network Providers, the amount determined as 250% of the amount that would be reimbursed for the service or supply under Medicare." (Dkt. No. 35-4 at 195.) Covered Charges are defined as "authorized charges up to the Allowance, for Covered Services and Supplies." (Dkt. No. 35-4 at 199.) Plan participants also have cost-sharing obligations, including a $500 deductible and coinsurance of 30% of the Covered Charge. (Dkt. No. 35-4 at 198-99, 234, 237 *et seq.*) The SPD also warns participants that they may be exposed to additional charges when using out-of-network providers. (Dkt. Nos. 35-1 ¶¶ 9-11, 37-1 ¶¶ 9-11; *see also* Dkt. No. 35-4 at 195, 204, 236.)

Prior to Patient's surgery, his wife contacted Horizon regarding Plan coverage and was informed by Horizon that, pursuant to the terms of the SPD, Plaintiff would be paid 70% of the

---

[1] Citations to "Dkt. No. 35-1" and "Dkt. No. 37-1" refer to Defendants' Statement of Undisputed Material Facts and Plaintiff's Statement of Undisputed Material Facts, respectively.
[2] The parties agree that the Plan is an "employer welfare benefit plan" under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002, *et seq.* (Dkt. Nos. 35-1 ¶ 5; 37-1 ¶ 5.)

Plan's contract rate and Patient would be responsible for the difference between the Covered Charges and what the out-of-network surgeon might bill. (Dkt. Nos. 35-1 ¶¶ 17-20; 37-1 ¶¶ 17-20.) Plaintiff ultimately billed $195,550.00 for Patient's surgery, of which Defendant paid less $9,000.00.[3] (Dkt. Nos. 35-1 ¶¶ 21-24; 37-1 ¶¶ 21-24.) The amount paid was consistent with 250% of Medicare's reimbursement rate. (Dkt. Nos. 35-1 ¶ 22; 37-1 ¶ 22.) Plaintiff appealed as to the amount of the reimbursement, but did not challenge Defendants' "calculation of Allowances." (Dkt. Nos. 35-1 ¶ 25; 37-1 ¶ 25.) Defendant denied Plaintiff's administrative appeal and refused to make additional payment. (Dkt. Nos. 35-1 ¶¶ 25-26; 37-1 ¶¶ 25-26.)

On September 29, 2016, Plaintiff filed suit in the Superior Court of New Jersey, Law Division, Passaic County. (Dkt. No. 1 Ex. A.) One month later, Defendants removed to this Court. (Dkt. No. 1.) On June 27, 2017, Plaintiff filed an Amended Complaint, alleging breach of contract (Count One), failure to make payments pursuant to Patient's Plan (Count Two), breach of fiduciary duty (Count Three), and failure to establish/maintain reasonable claim procedures (Count Four). (Dkt. No. 23.) Defendants moved for summary judgment on January 8, 2018. (Dkt. No. 35.) Plaintiff opposed the motion on February 6, 2018 and Defendants replied on February 13, 2018. (Dkt. Nos. 37, 38.) Plaintiff has voluntarily dismissed Counts One and Four, therefore, this Court will only address Counts Two and Three. (*See* Dkt. No. 37 at 10.)

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

---

[3] Defendant paid that amount after applying "Medicare based allowances, patient cost-sharing obligations, coding logic, and standard assistant procedure reimbursement guidelines." (Dkt. No. 35-1 ¶ 24.)

genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 Fed. Appx. 548, 554 (3d Cir. 2002).

**III.    DISCUSSION**

**A. Count Two – Failure to Make Payments**

ERISA provides that a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan . . .." 29 U.S.C. § 1132(a)(1)(B). Plaintiff, as Patient's assignee, argues that Defendants failed to "remit[] payment at reasonable and customary rates" under the Plan and now seeks to recover the difference between what it received and what it argues it is owed. (Dkt. No. 37 at 6-7.) However, the SPD explicitly provides that "in the case of Out-of-Network Providers," the authorized Allowance is "determined as 250% of the amount that would be reimbursed for the service or supply under Medicare." (Dkt. No. 35-4 at 195.) The language of the Plan could not be more clear. Plaintiff has no right to expect to be reimbursed more than the Medicare rates allow. Further, the SPD clearly states that participants may be required to pay more for services rendered by out-of-network providers, and Patient was informed of that on two separate occasions prior to his surgery.[4] As nothing in the record suggests that the underlying claims were improperly

---

[4] Plaintiff's argument that "Defendants' liability is 70%" of "reasonable and customary" rates ignores the explicit language of the SPD, which clarifies that Plaintiff's responsibility is "30% of the Covered Charge" not 30% of the total amount billed by an out-of-network provider. (Dkt. No. 35-4 at 198-99, 234, 237 *et seq.*)

5

processed under the Plan, Plaintiff's entire suit rests on its dissatisfaction with the amount it was reimbursed. Giving all favorable inferences to Plaintiff, there is no genuine issue of material fact as to the language of the contract or the manner in which Defendants calculated the reimbursement owed Plaintiff. Therefore, summary judgment is appropriate as to Count Two of the Amended Complaint.[5]

### B. Count Three – Breach of Fiduciary Duty

ERISA requires plan fiduciaries to act "solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Claims for breach of this duty are authorized by Section 1132(a)(3)(B) which provides that a participant or beneficiary may "obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provisions of this subchapter." 29 U.S.C. § 1132(a)(3)(B). "Other equitable relief" is limited to "only those categories of relief that were typically available in equity." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citing *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 255-56 (1993)).

---

The Court is also unpersuaded by Plaintiff's argument that Defendants' reimbursement "violated the [P]lan's 'out-of-pocket maximum' provision," by obligating Patient to pay more than $6,450.00. (Dkt. No. 37 at 7.) The SPD specifically states that "[i]n no event will non-covered charges go to meet the out-of-pocket maximum." (Dkt. No. 35-4 at 236.)

[5] Defendants argue that "this Court's role is limited to reviewing the administrative record that was available to the decision-maker at the time of the underlying benefits determination . . . and determining whether that determination was arbitrary and capricious." (Dkt. No. 35-2 at 7 (citing *Johnson v. UMWA Health & Ret. Funds*, 125 Fed. Appx. 400, 405 (3d Cir. 2005); *Hunley v. Hartford Life & Accident Ins. Co.*, 712 F. Supp. 2d 1271, 1279 (M.D. Fla. 2010) (stating that "the typical standard of review does not apply in ERISA actions . . . because the district court sits in more of an appellate capacity when reviewing ERISA claims").) Although this Court is not convinced that "arbitrary and capricious" is the proper standard of review for this case, the record does not support a finding that Defendants acted capriciously. Therefore, under either the arbitrary or capricious or the traditional *Celotex* standard, summary judgment is appropriate.

Plaintiff argues Defendants violated a fiduciary duty by wrongfully withholding funds owed to Plaintiff. (Am. Compl. ¶¶ 32-40.) As a result, Plaintiff seeks $187,610.53 as payment of "all benefits Patient would be entitled to pursuant to the Plan," compensatory damages and interest, fees and costs, and "such other and further relief as the Court may deem just and equitable." (*Id.* at ¶ 40.) This is insufficient to sustain Plaintiff's claim. First, Count Three is duplicative of Count Two in that it relies on the same facts (payment of benefits for Patient's surgery under the Plan) and seeks the identical remedy. (Compare Am. Compl. ¶¶ 31 and 40; *see also Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (noting that where a party has "adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate'") (internal citation omitted).) Second, Plaintiff seeks legal, rather than equitable relief, which is not authorized under the statute. *See* 29 U.S.C. § 1132(a)(3)(B) (permitting a claimant to seek "equitable relief"); *Great-West Life*, 534 U.S. at 210 (noting that money damages are legal relief) (internal citations omitted). Merely adding a request for relief that this Court "may deem just and equitable" does not transform a claim sounding in law to one sounding in equity. Therefore, summary judgment is appropriate as to Count Three.

## IV.   CONCLUSION

For the reasons set forth above, this Court **GRANTS** Defendants' Motion for Summary Judgment as to Counts Two and Three. An Order consistent with this Opinion follows.

s/ *Susan D. Wigenton*_____
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:       Clerk
cc:         Leda D. Wettre, U.S.M.J.
            Parties